**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3241
_____

US AIRLINE PILOTS ASSOCIATION,
Appellant

v.

US AIRWAYS, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(No. 2:14-cv-00007)
Magistrate Judge: Hon. Robert C. Mitchell
_____

Submitted Under Third Circuit LAR 34.1(a)
February 10, 2015
_____

Before: CHAGARES, VANASKIE, and SHWARTZ, Circuit Judges.

(Filed: March 9, 2015)
_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

The US Airline Pilots Association ("USAPA") appeals the order dismissing its

complaint, which seeks to vacate an arbitration award in favor of US Airways, Inc. ("US

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

Airways") pursuant to the Railway Labor Act, 45 U.S.C. §§ 151-88 ("RLA"). USAPA challenges the arbitrator's interpretation of amendments to the collective bargaining agreement ("CBA"), the record he developed, and the length of time he took to issue a decision. For the following reasons, we will affirm.

I.

In 2002, US Airways suffered significant financial losses. J.A. 30. As part of its restructuring program, US Airways and the Air Line Pilots Association, International ("ALPA")[1] agreed to reduce the hourly pay rates of US Airways pilots (the "Pilots") in exchange for a series of future compounded percentage pay rate increases, including a 3% wage increase at issue here (the "Restructuring Agreement").[2] J.A. 31. The

---

[1] ALPA was the collective bargaining representative prior to April 18, 2008, when USAPA took over the role. J.A. 30. On September 16, 2014, the National Mediation Board extinguished USAPA's certification in connection with US Airways's merger with American Airlines, Inc. ("American") and certified the Allied Pilots Association ("APA") to represent both American and US Airways pilots. In re Allied Pilots Assoc., 41 N.M.B. 289 (2014). We reject US Airways's contention that USAPA may not pursue this appeal because USAPA has been decertified. First, in looking to vacate the arbitration award, USAPA seeks damages in the form of back pay and not specific performance, an ongoing remedy, or the right to engage in any bargaining on behalf of its former members. Second, USAPA was responsible for protecting the Pilots' interests under the CBA and the amendments thereto under which USAPA claims such damages are due. It fulfilled this responsibility by pursuing the grievance through arbitration and appealing the adverse award and hence is in the best position to efficiently see the case to completion. Finally, allowing USAPA to pursue this appeal will not impact the certification of the successor union or create confusion concerning why certain members of the current union may receive a benefit that others will not if the appeal is successful. See, e.g., Assn'n of Flight Attendants, AFL-CIO v. Delta Air Lines, Inc., 879 F.2d 906, 913-14 (D.C. Cir. 1989); Int'l Union, United Auto., Aerospace, & Agric. Workers of Am. v. Telex Computer Prods., Inc., 816 F.2d 519, 522-24 (10th Cir. 1987).

[2] The Restructuring Agreement provides, in relevant part:

2

Restructuring Agreement also extended the "amendable date" of the CBA, "i.e., the date the CBA would next be subject to further negotiations," to December 31, 2008. J.A. 30; J.A. 49.

Shortly after executing the Restructuring Agreement, US Airways filed for bankruptcy. J.A. 31. To "sustain the airline through bankruptcy," J.A. 126, US Airways and ALPA entered into a "supplementary cost reductions" letter of agreement ("LOA 84"), J.A. 32, adjusting "the hourly rate of pay that would otherwise have been paid under the Restructuring Agreement in the applicable pay period," J.A. 32; J.A. 128-29. This included a reduction in the Pilots' pay rates from 2003 through 2005 and a 2% increase in each of 2007 and 2008. J.A. 32, 128-29. For "2009 & beyond," the Pilots' pay rates would be determined "[a]s per [the] Restructuring Agreement." J.A. 32, 128-29.

US Airways filed for bankruptcy a second time in 2004, J.A. 33, and US Airways and ALPA executed a "transformation plan" letter of agreement ("LOA 93"), "[f]reez[ing] [the Pilots'] current [pay] rates effective 5/01/04 through 12/31/09," J.A. 33-34; J.A. 163.[3] LOA 93 further extended the CBA's amendable date from December 31,

---

> Hourly pay rates will be increased by a compounded 1% effective on May 1, 2003, May 1, 2004, May 1, 2005, and May 1, 2006, and further increased by a compounded 2% effective on May 1, 2007 and May 1, 2008, and 3% on May 1 of the succeeding status quo period (i.e., the period past the [CBA] amendable date).

J.A. 31, 49.

[3] LOA 93 provides in relevant part:

2008 to December 31, 2009, J.A. 33, 163, and stated that "all terms and conditions" of the CBA "as amended" would otherwise "remain in full force and effect," J.A. 34, 161.

USAPA learned that US Airways planned to maintain the 2009 pay rates for 2010, and in September 2009, it filed a grievance with the System Board of Adjustment ("SBA").[4] J.A. 35-36. In the grievance, USAPA claimed that the CBA as amended required that the Pilots' pay rates be restored to the level outlined in the CBA after the pay freeze ended in 2009 (the "Restoration Issue"). J.A. 35-36. The SBA convened a four-day hearing to address the grievance beginning February 1, 2010. J.A. 36-37.

While the grievance was pending, US Airways failed to implement the 3% increase to the hourly pay rates set forth in the Restructuring Agreement. J.A. 37. Several pilots filed grievances, claiming that they were entitled to the increase under the Restructuring Agreement, LOA 84, and LOA 93 (the "3% Issue"). J.A. 37. These grievances were held in abeyance because the 3% Issue was part of the Restoration Issue grievance. J.A. 37-38.

---

**Revisions to Hourly Pay Rates**: The rates of pay specified in [the CBA], as modified by the Restructuring Agreement, will be revised as follows:
1. Freeze current rates effective 5/01/04 through 12/31/09.
2. Reduce rates as frozen by 18.0%.
3. Reduce International pay override . . . by 18.0% for transoceanic trips; eliminate international override for non-transoceanic trips.
4. Pay all flying at day rate.

J.A. 33-34, 163.

[4] The SBA was established by US Airways and the Pilots pursuant to the RLA to resolve "disputes which may arise under the terms of the [CBA] and any amendments or additions thereto." J.A. 36, 193. It was comprised of five members—two each from USAPA and US Airways and a neutral arbitrator (the "Arbitrator"). J.A. 36.

4

The Arbitrator issued the SBA's first draft opinion and award on November 9, 2011, denying USAPA's grievance with respect to the Restoration Issue.[5]  J.A. 38.  The draft opinion did not mention the 3% Issue.  J.A. 38.  At a subsequent SBA meeting on March 6, 2012, the Arbitrator stated that he had not been aware that the 3% Issue was before the SBA.  J.A. 39.  In response, USAPA asked the Arbitrator to re-open the record to permit it to present additional evidence on the 3% Issue.  J.A. 39.  The Arbitrator denied this request but allowed USAPA and US Airways to submit supplemental briefs on the 3% Issue.  J.A. 39.  Over the course of the next year, USAPA twice more repeated its request to re-open the record and for an additional hearing, to no avail.  J.A. 40.

The Arbitrator issued the SBA's draft supplemental opinion regarding the 3% Issue on October 10, 2012, J.A. 39, and its final supplemental opinion on August 14, 2013, denying USAPA relief with respect to the 3% Issue, (the "Award").  J.A. 40-41.[6] The Arbitrator concluded that, based on his view of the CBA, Restructuring Agreement, LOAs, and testimony, the 3% increase embodied in the Restructuring Agreement was not included in LOA 93, and hence US Airways was not obligated to pay it.  J.A. 296-98. More specifically, the Arbitrator noted that: (1) there was no language in LOA 93 referencing pay increases on dates after the CBA was amendable, J.A. 297; (2) there was

---

[5] On January 9, 2013, the Arbitrator issued a final opinion and award denying USAPA relief on the Restoration Issue.  J.A. 40 (Compl. ¶ 56).

[6] The members of the SBA affiliated with US Airways joined the Award.  The USAPA members of the SBA dissented, resulting in a 3-2 decision.  See J.A. 301-13.

5

evidence showing no intent to carry forward the 3% increase[7], J.A. 298-99; and (3)

USAPA had an opportunity to successfully negotiate a provision to preserve the "3%

post-amendable date pay increase[]," but failed to do so, J.A. 297.

USAPA filed a two-count complaint in the District Court seeking to vacate the

Award, arguing that the SBA failed to consider the controlling language of LOA 93 in

deciding the 3% Issue ("Count I") and to comply with the procedural requirements of the

RLA ("Count II"). See J.A. 42-44. The District Court rejected these arguments and

granted US Airways's motion to dismiss under Fed. R. Civ. P. 12(b)(6). See J.A. 19, 23-

25. USAPA appeals.

## II.[8]

Our scope of review is narrow. United Steelworkers of Am. Local 1913 v. Union

R.R. Co., 648 F.2d 905, 910 (3d Cir. 1981) (noting that this scope of review has been

described as "among the narrowest known to the law" (internal quotation marks and

citations omitted)). Under the RLA, an arbitral tribunal's award is conclusive absent a

showing that: (1) the tribunal failed to confine itself to matters within the scope of its

jurisdiction; (2) the tribunal failed to comply with RLA requirements; or (3) a member of

---

[7] US Airways allocated no costs associated with post-amendable date pay increases as a result of LOA 93, and this convinced the Arbitrator that the 3% increase was not among the obligations arising from LOA 93. J.A. 299.

[8] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1337 and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of a district court's grant of a motion to dismiss. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011). Accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

the tribunal engaged in fraud or corruption.[9]  45 U.S.C. § 153(q); <u>United Steelworkers</u>, 648 F.2d at 910.  Given the narrow grounds on which an award may be disturbed, "perhaps review is a misnomer; where fraud is not an issue we ask only whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it."  <u>United Transp. Union v. Nat'l R.R. Passenger Corp.</u>, 588 F.3d 805, 810 (2d Cir. 2009) (internal quotation marks and citations omitted).  Mindful of our limited authority, we turn now to USAPA's challenges to the Award.

III.

USAPA argues that the SBA failed to confine itself to matters within the scope of its jurisdiction by failing to consider the language in LOA 93 stating that the CBA remained "in full force and effect" other than as modified therein.  Appellant Br. 26.  It contends that language indicates that the 3% increase to the Pilots' hourly pay rates under the Restructuring Agreement survived the amendments to the pay rates described in LOA

---

[9] Several other courts have adopted the narrow scope of review of 45 U.S.C. § 153 in reviewing airline SBA awards.  <u>See, e.g.</u>, <u>Mitchell v. Cont'l Airlines, Inc.</u>, 481 F.3d 225, 231 (5th Cir. 2007); <u>Edelman v. W. Airlines, Inc.</u>, 892 F.2d 839, 842 (9th Cir. 1989); <u>Hunt v. Nw. Airlines, Inc.</u>, 600 F.2d 176, 178-79 (8th Cir. 1979); <u>Adamczewski v. Nw. Airlines, Inc.</u>, 530 F.Supp. 100, 102 n.4 (N.D. Ill. 1981); <u>accord</u> <u>Int'l Ass'n of Machinists, AFL-CIO v. Cent. Airlines, Inc.</u>, 372 U.S. 682, 686-87, 694 (1963) (holding that the RLA authorizes federal courts to enforce airline board of adjustment awards, notwithstanding the fact that this authority is not expressly articulated in § 184, and directing courts to construe § 184 in light of the statute as a whole, including § 153).  USAPA and US Airways agree that § 153 applies here. **Appellant Br. 21 (reciting scope of review articulated in § 153 and noting that the complaint is "firmly within the structure of § 153 and its decisional law"); Appellee Br. 32 (reciting scope of review articulated in § 153).**

7

84 and LOA 93 and should have been implemented on May 1, 2010. **Appellant Br. 26-27.**

The Arbitrator's jurisdiction is determined by the CBA and the grievance itself. See Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 279 (3d Cir. 2004). The subject at issue here, namely pay increases, was squarely within the grievance, and the parties asked the Arbitrator to examine and interpret the CBA and LOAs to resolve their dispute. See J.A. 193 (establishing the SBA to decide disputes arising out of the CBA and amendments thereto). Indeed, "it is the arbitrator's view of the facts and of the meaning of the contract[s] that [USAPA] has agreed to accept." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 37-38 (1987).

USAPA's argument boils down not to whether the Arbitrator had the authority to interpret the CBA and LOAs but rather whether his interpretation was correct. We, however, "are not authorized to review the arbitrator's decision on the merits, despite allegations that the decision . . . misinterprets the parties' agreement." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001). Rather, we must uphold the Award so long as it "draws its essence" from the CBA, in that it can be rationally derived from that agreement, Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1125, 1128 (3d Cir. 1969), and may vacate the Award only if it is "totally unsupported by principles of contract construction." Major League Umpires Ass'n, 357 F.3d at 280 (internal quotation marks and citations omitted).

Here, the Award can be rationally derived from the CBA and LOAs. As shown in LOA 84 and LOA 93, US Airways and ALPA re-negotiated the Pilots' pay rates on two

separate occasions after the execution of the Restructuring Agreement. It can be inferred from the absence of language concerning the previously agreed-upon 3% increase in LOA 93 that it was not the parties' intent for that increase to survive the pay freeze. The absence of such language could reasonably have been viewed as intentional given US Airways's persistent financial difficulties and that the pay provisions were otherwise set forth in detail in each agreement. Because this inference is supported by an interpretation of the Restructuring Agreement, LOA 84, and LOA 93, "viewed in the light of [their] language, [] context, and . . . other indicia of the parties' intention," Fletcher, 405 F.2d at 1128, we conclude that the Arbitrator did not act outside his jurisdiction, the Award is not "totally unsupported by principles of contract construction," Major League Umpires Ass'n, 357 F.3d at 280, and the Award "draws its essence" from the CBA, Fletcher, 405 F.2d at 1125. Thus, the request to vacate the Award for lack of jurisdiction is without basis.[10]

USAPA also claims that the Arbitrator failed to comply with the procedural requirements of the RLA in refusing to re-open the record and convene an additional

_____

[10] To the extent that USAPA challenges the Arbitrator's failure to specifically "cite or discuss" the "full force and effect" language of LOA 93 in the Award, Appellant Br. 26, "[w]e note that 'arbitrators have no obligation to the court to give their reasons for an award.'" Akers Nat'l. Roll Co. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, 712 F.3d 155, 162 (3d Cir. 2013) (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 598 (1960)). Furthermore, that the Arbitrator did not mention the "full force and effect" language does not mean that he "completely ignored" it. Appellant Br. 25. To the contrary, the Arbitrator specifically stated that he conducted "a careful review of the language in . . . the Restructuring Agreement [and] Letter of Agreement 93," J.A. 297, in an effort "to locate where in the terms of [those agreements] the parties specifically addressed the subject matter of post-amendable date pay increases," J.A. 296.

hearing on the 3% Issue, thereby failing to ensure the SBA had a "a full statement of the facts and all supporting data bearing upon the disputes." Appellant Br. 30 (quoting 45 U.S.C. § 153). USAPA also asserts that the length of time it took the Arbitrator to render the award violated the RLA's goal of "prompt and orderly settlement of all disputes." Appellant Br. 40 (quoting 45 U.S.C. § 151a).

These arguments are unavailing. To begin, there is no indication that the SBA lacked "a full statement of the facts and all supporting data bearing upon the disputes," given that both USAPA and US Airways witnesses presented testimony on the subject at the hearings, see generally J.A. 36-37, 349-66, including testimony from the chairman of the ALPA negotiating committee, regarding USAPA's position that following the execution of LOA 93 the Pilots would receive a 3% increase every May 1 during the status quo period. Moreover, the parties submitted supplemental briefs[11] on the 3% Issue. J.A. 39. USAPA's supplemental brief thoroughly outlined its position, cited language from the Restructuring Agreement and LOA 93, and discussed the bargaining history behind the CBA amendments as reflected in meeting notes of US Airways's labor representatives and that were discussed during the hearing. J.A. 510-14.[12]

_____

[11] While USAPA's supplemental brief and the hearing transcript were not attached to USAPA's complaint, both were referenced therein. J.A. 36-37, 39. We may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting the motion to dismiss into a motion for summary judgment. Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted).

[12] In support of its argument that the Arbitrator failed to comply with the RLA in refusing an additional hearing on the 3% Issue, USAPA also cites 29 C.F.R. § 301.7(a), which states that "[o]ral hearings will be granted if requested by the parties or either of them . . . ." USAPA raises this argument for the first time on appeal, and thus we are not

Moreover, USAPA identified no specific evidence that it would have presented if given the opportunity, stating only that it would introduce "focused" testimony "on how the 3% raise remained part of the CBA." Appellant Br. 36. Thus, at best, it appears USAPA intended to offer evidence that would have been cumulative. Under these circumstances, we conclude that the Arbitrator did not fail to comply with the RLA.

Our conclusion is not altered by any delay in the Arbitrator's issuance of the Award.[13] Although promptness of decisions is among the RLA's goals, neither the RLA nor the CBA contains a time limit within which awards must be issued.[14]

IV.

For the foregoing reasons, we will affirm the order of the District Court granting US Airways's motion to dismiss under Fed. R. Civ. P. 12(b)(6).

---

required to consider it. See Tri-M Grp., L.L.C. v. Sharp, 638 F.3d 406, 416 (3d Cir. 2011). Moreover, even assuming this regulation applies, the SBA did convene a hearing during which the 3% Issue was discussed.

[13] Although USAPA characterizes the delay as totaling 42 months, Appellant Br. 40, it overstates the length of the delay as it ignores the activity that occurred between the filing of the grievance and the issuance of the Award.

[14] The case USAPA cites in support of this argument, Jones v. St. Louis-San Francisco Ry. Co., 728 F.2d 257, 265 (6th Cir. 1984), is distinguishable, as the parties in Jones entered an arbitration agreement that required awards to be issued within 15 days of the hearing.