# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-10036

United States Court of Appeals
Fifth Circuit

**FILED**
June 13, 2019

Lyle W. Cayce
Clerk

KEVIN HORNER; JOHN KRAKOWSKI; KEITH BOUNDS,

> Plaintiffs - Appellants

JOSEPH TERSTEEG,

> Intervenor Plaintiff - Appellant

v.

AMERICAN AIRLINES, INCORPORATED; ALLIED PILOTS
ASSOCIATION,

> Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, JONES, and DENNIS, Circuit Judges.

PER CURIAM:

This appeal arises from a multi-year dispute over the integration of former Trans World Airlines (TWA) pilots into American Airlines's (American) pilot seniority lists. In 2012, American and its labor union, the Allied Pilots Association (APA), entered into a new collective bargaining agreement (CBA) and agreed to "engage in final and binding interest arbitration" by a panel of neutral arbitrators, including Richard Bloch, to decide what job protections would be provided former TWA pilots by the new CBA. After the arbitrators

issued a ruling, American and the APA translated it into contractual language to supplement the CBA. The CBA reserved a set number of Captain positions for former TWA pilots to bid on, but these protections were not permanent and were set to expire once a particular TWA pilot, Magnus Alehult, reached a designated level of seniority. The CBA also set forth dispute resolution procedures for all American pilots, including former TWA pilots, to raise grievances. Under the CBA, a pilot could initiate grievance proceedings and, once those procedures were exhausted, the APA could pursue the grievance further in binding arbitration before a board of four or five arbitrators.

In 2013, three pilots who worked for American before the TWA-American merger (legacy American pilots), filed a grievance, arguing that Alehult had reached a level of seniority such that the CBA protections for former TWA pilots had expired. A former TWA pilot filed an opposition grievance, arguing that the protections should still apply. The pilots' grievances were consolidated and advanced to arbitration before Arbitrator Bloch, who, in 2017, ruled in favor of the legacy American pilots, finding that the protections had expired. The former TWA pilots filed this action against American and the APA in the district court under the Railway Labor Act (RLA), seeking to vacate the arbitration award and enjoin its implementation. They also asserted that the APA breached its duty of fair representation through its conduct during the proceedings. American and the APA moved to dismiss and for partial summary judgment, and the district court granted those motions. The former TWA pilots appealed.

"We review a grant of summary judgment *de novo,* applying the same standard as the district court." *Mitchell v. Cont'l Airlines, Inc.*, 481 F.3d 225, 230 (5th Cir. 2007). A party is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the

No. 18-10036

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).

The district court concluded that the former TWA pilots lacked standing to challenge the arbitration award. The district court relied primarily on *Mitchell v. Continental Airlines*, which held as follows:

> [W]hen a CBA that is formed pursuant to the RLA establishes a mandatory, binding grievance procedure and gives the union the exclusive right to pursue claims on behalf of aggrieved employees, one whose employment is governed by the CBA lacks standing to attack the results of the grievance process in court, except only that an employee has standing to bring a claim of unfair representation.

*See* 481 F.3d at 234. The district court recognized that *Mitchell* is factually distinguishable from the instant case in certain respects. Most significantly, in *Mitchell*, the union had the sole authority to file a grievance from start to finish, whereas here, a pilot grievant could initiate a claim, but the APA had exclusive control over advancing the claim to arbitration. *See Mitchell*, 481 F.3d at 227. However, the district court reasoned that *Mitchell*'s underlying rationale of limiting an individual employee's standing to challenge a binding arbitration award advanced the purposes of federal labor statutes and was applicable here. We agree and hold that *Mitchell* controls and that an individual grievant generally lacks standing to challenge the results of a binding arbitration process where a union has the sole authority to compel arbitration under a CBA formed pursuant to the RLA. *See Mitchell*, 481 F.3d at 234*; see also Mackenzie v. Air Line Pilots Ass'n, Int'l*, 598 F. App'x 223, 224 (5th Cir. 2014) (applying *Mitchell* and holding that individual pilots lacked standing to challenge an arbitration award).

The district court next considered the former TWA pilots' unfair-representation claim—the one exception to the general lack of standing recognized in *Mitchell*. The former TWA pilots claimed that the APA breached

3

its duty of fair representation by allowing modifications to the arbitration process set forth in the CBA; remaining neutral in the proceedings; and refusing to honor a prior interpretation of the terms of the CBA's protections, under which the protections had not expired. The district court rejected this claim, finding a lack of evidence that the APA's conduct was "arbitrary, discriminatory, or in bad faith, so that it undermined the fairness or integrity of the grievance process." *See Johnson v. E. Baton Rouge Fed'n of Teachers*, 706 F. App'x 169, 171 (5th Cir. 2017) (quoting *Landry v. The Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989)). Under our "highly deferential" review of the APA's performance, we agree. *See Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991). To the extent the APA permitted modifications to the CBA's grievance and arbitration proceedings, this was not arbitrary,[1] discriminatory,[2] or evidence of bad faith.[3] All parties agreed to waive certain steps in the proceedings to advance their claims to arbitration; Arbitrator Bloch had continuing jurisdiction to resolve disputes arising from the arbitration panel's 2012 ruling; and the specific procedures set forth in the CBA were not statutorily required under the RLA. Additionally, the APA's decision to remain neutral in the proceedings was not "arbitrary, discriminatory, or in bad faith, so that it undermined the fairness or integrity of the grievance process," *see Johnson*, 706 F. App'x at 171, given that the APA represented all American pilots, and the pilot seniority system created

---

[1] A union's conduct is "arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *See O'Neill*, 499 U.S. at 67 (internal citations and quotation marks omitted).

[2] Discrimination requires "substantial evidence" that there was discrimination that was "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp.'s of Am. v. Lockridge*, 403 U.S. 274, 301 (1971).

[3] Bad faith requires "a motive to harm a particular group, and turns on the subjective motivation of the union officials." *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 602 (5th Cir. 2017) (internal quotation marks omitted).

competition between legacy American and former TWA pilots. Finally, the APA's prior interpretation of the CBA was not a binding contract that precluded it from later taking a neutral position for the benefit of all pilots.

Finding no error in the district court's application of these legal principles, we AFFIRM for essentially the same reasons given by that court.