# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 16, 2020

Lyle W. Cayce
Clerk

No. 18-50110

Union Pacific Railroad Company,

*Plaintiff—Appellee*,

*versus*

American Railway & Airway Supervisors' Association, *a Division of* The Transportation Communications Union/IAM; Roland Beltran,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:17-CV-270

Before Owen, *Chief Judge*, and King and Stewart, *Circuit Judges*.
Per Curiam:*

After a second positive drug test, Union Pacific permanently terminated Roland Beltran's employment. During arbitration, the Public Law Board concluded the second drug test was a false-positive and ordered

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 18-50110

Beltran reinstated. Union Pacific refused to reinstate Beltran and seeks to vacate the arbitration award. Beltran seeks to enforce the award. The district court vacated the Public Law Board's order on public policy grounds, and this appeal followed. Because we conclude the Public Law Board did not violate public policy and all other relevant arguments were waived, we REVERSE the district court's order of vacatur and REMAND this case for further proceedings.

## I.

Defendant-appellant Roland Beltran worked as a Car Foreman for plaintiff-appellee Union Pacific, a railroad carrier within the meaning of the Railway Labor Act ("RLA"). The American Railway & Airway Supervisors' Association ("ARASA") is a labor organization that represents employees of Union Pacific, like Beltran. This appeal centers around a collective bargaining agreement ("CBA"), which governs the hours of service and working conditions of ARASA-represented employees. The CBA requires disputes to be arbitrated in accordance with the RLA. *See* 45 U.S.C. § 151 et seq.

Beltran's position with Union Pacific required him to hold a commercial driver's license, making him subject to random drug testing under Department of Transportation ("DOT") regulations and company policy. Beltran first tested positive for cocaine on December 23, 2010. He and ARASA signed a last-chance agreement. Beltran was thereafter reinstated, pursuant to Union Pacific's Drug and Alcohol Policy for a "one-time return to service opportunity." According to that policy, "[a]n employee who has been granted a one-time return to service. . . and who violates the Union Pacific Drug and Alcohol policy again within a ten (10) year period will be dismissed permanently."

No. 18-50110

Beltran tested positive for amphetamines and methamphetamine in a follow-up test on November 20, 2014. Dr. Randy Barnett, the Medical Review Officer ("MRO"), interviewed Beltran over the phone and asked what medications he was taking. The MRO verified the positive result to Union Pacific and stated that the test was conducted in accordance with 49 C.F.R. Part 40 and Part 382.

Union Pacific then conducted an investigation and hearing on the matter, at which the parties submitted testimonial and documentary evidence. Union Pacific, through Tracy W. Brown, laid out the charges and the testing procedures that documented the confirmed positive result for amphetamines and methamphetamine. Beltran testified that he had taken prescription and over-the-counter medications that could have led to a false-positive. Beltran also submitted a letter from Dr. Michael Zeitlin which identified the medications that Beltran was allegedly taking that could cause false positives. The letter from Dr. Zeitlin noted that "[a]mphetamine or methamphetamine is the most common[ly] reported false-positive urine drug test result."

Dr. Barnett, the MRO, testified as a witness for Union Pacific, and his report was made an exhibit. Dr. Barnett stated that none of the medications listed by Dr. Zeitlin would cause a false positive for methamphetamine, and thus there was no legitimate medical explanation for Beltran's positive test.

On January 9, 2015, Union Pacific notified Beltran that his employment was terminated based on the hearing. In accordance with the procedures set forth in the RLA and the CBA, ARASA moved the matter to arbitration before a Public Law Board ("PLB"). The parties submitted written briefs and exhibits, including the transcript of the initial hearing. PLB No. 5514 issued Award No. 101, which ordered Beltran to return to work,

without back pay, but with seniority and other benefits intact. Union Pacific did not return Beltran to service.

Instead, Union Pacific filed suit in the District Court for the Western District of Texas seeking to set aside the award. Beltran and ARASA counter-claimed seeking to enforce the award. The parties prepared a stipulated record consisting of the submissions and evidence before the PLB and cross-moved for summary judgment. The district court granted Union Pacific's motion and vacated the arbitration award, concluding that the PLB violated public policy. Beltran and ARASA timely appealed.

## II.

We review de novo the district court's order to vacate the arbitration award. *Gulf Coast Indus. Workers Union v. Exxon Co., U.S.A.*, 991 F.2d 244, 248 (5th Cir. 1993); *see Cont'l Airlines, Inc. v. Int'l Bhd. Of Teamsters*, 391 F.3d 613, 616 (5th Cir. 2004).

The CBA at issue requires arbitration in accordance with the RLA's mandatory procedures for the resolution of disputes, both major and minor. *See Mitchell v. Cont'l Airlines, Inc.,* 481 F.3d 225, 230 (5th Cir. 2007). This dispute over a drug-testing result is classified as a "minor dispute" under the RLA. *Id.* at 230-31. Minor disputes must be resolved through compulsory and binding arbitration. *Cont'l Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 555 F.3d 399, 405 (5th Cir. 2009) (citing *Mitchell*, 481 F.3d at 231). Judicial review of arbitration decisions arising from the terms of a CBA is narrowly limited, and courts should afford great deference to arbitration awards. *Id.* at 405 (quoting *Resolution Performance Prods., LLC v. Paper Allied Indus. Chem. and Energy Workers Int'l, Local 4-1201*, 480 F.3d 760, 764 (5th Cir. 2007)). The standard of review is "among the narrowest known to the law" and flows from the RLA's "preference for the settlement of disputes in accordance with

contractually agreed-upon arbitration procedures." *Id. (quoting Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 323 (1972)).

We will defer to an arbitrator's decision unless: (1) the arbitrator failed to comply with the RLA; (2) there is evidence of fraud or corruption in the arbitrator; or (3) the order by the arbitrator did not "confine itself to matters within the scope of [its] jurisdiction." *Id.* at 406 (quoting *Mitchell*, 481 F.3d at 231). This court has also held that we may vacate an arbitrator's decision pursuant to an exceedingly narrow, judicially created exception for public policy concerns. *See id.* at 415-20.

## III.

The parties ask that we address whether: (1) public policy review is available under the RLA; (2) the award violates public policy; (3) Union Pacific forfeited the jurisdictional argument by failing to present the relevant regulation to the arbitrator; (4) the jurisdictional argument fails on the merits. We address the parties' public policy concerns and jurisdictional arguments below.

### A. Public Policy Concerns

Union Pacific contends that the PLB violated an explicit, well-defined public policy by failing to defer to the MRO's finding that Beltran's second drug test was positive. The district court agreed and vacated the PLB's award accordingly. ARASA argues on appeal that public policy review is unavailable and, in the alternative, that the argument fails on the merits.

As a threshold matter, in *Continental Airlines v. Air Line Pilots*, this court recognized a narrow public policy exception in the relevant context and

No. 18-50110

distilled three guiding principles. [1] *Id.* at 406. First, "public policy. . . must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents . . . ." *Id.* at 415-16 (omission in original) (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am.,* 461 U.S. 757, 766 (1983)). Second, the relevant point of inquiry is whether the ultimate arbitration award violates public policy. *See id.* at 416. And third, "courts should be particularly chary when divining public policy [where] 'two political branches have created a detailed regulatory regime in a specific field.'" *Id.* at 417-18 (quoting *E. Associated Coal Crop v. United Mine Workers of Am.*, 531 U.S. 57, 63 (2000)).

Against that backdrop, we analyze whether the arbitration award contravenes public policy. "[W]e cannot embrace public policy as an end-run around RLA deference," *id.* at 420, and we consider whether the ultimate arbitration award violated 49 C.F.R. § 40.149(c). We look, then, to see not if the false-positive determination itself violates public policy, but whether the PLB's failure to defer to the MRO creates a conflict between the arbitration award and the federal regulation. *See id.* at 419-20; *see also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 45 (1987).

Subpart 40 of Title 49 of the Code of Federal Regulations "tells all parties who conduct drug and alcohol tests required by [DOT] agency regulations how to conduct these tests and what procedures to use," and "concerns the activities of transportation employers, safety-sensitive transportation employees . . . and service agents." 49 C.F.R. § 40.1. These regulations were issued pursuant to the Federal Omnibus Transportation Employee Testing Act of 1991 (the "Testing Act"), which places certain

---

[1] *Air Line Pilots* both recognized and went to great lengths to circumscribe the narrow exception. And, absent an intervening change in the law, this panel has no authority to overrule binding precedent. *See Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016).

restrictions on workers who test positive for using controlled substances. *See* Pub. L. No, 102-143, tit. V, 105 Stat. 917 (1991). The Testing Act's aims are complex and primarily remedial; these state that "rehabilitation is a critical component of any testing program," § 2(7), 105 Stat. 953, that rehabilitation "should be made available to individuals, as appropriate," *ibid.*, and that DOT must promulgate regulations for "rehabilitation programs." *E. Associated Coal*, 531 U.S. at 64.

On close inspection, it becomes apparent that § 40.149(c), the specific regulation at issue here, only purports to grant the MRO the "sole authority *under this part* to make medical determinations." 49 C.F.R. § 40.149(c) (emphasis added). To that end, an arbitration award would directly contravene § 40.149(c) if it disregarded the MRO's medical determination in ordering an employer to allow an employee to return to performing safety-sensitive work without going through DOT's rehabilitative measures. *See* 49 C.F.R. § 40.305 (prescribing return-to-duty requirements for employees who failed a drug or alcohol test); *cf. E. Associated Coal*, 531 U.S. at 64 (discussing the relevant legislation's "remedial aims").[2]

In other words, an arbitrator may disagree with the MRO as long as its remedy does not conflict with Part 40's return-to-duty procedures. The MRO has the sole authority to establish the validity of a drug test for

---

[2] Although this issue was not briefed, there was some discussion at oral argument as to whether the PLB ordered Beltran be returned to a safety-sensitive position. Appellants stated that the PLB did not do as much. Union Pacific, however, indicated this might be the consequence of the PLB award, given Beltran was reinstated with his seniority intact. Nevertheless, Union Pacific conceded that DOT regulations would have to be followed before Beltran resumed any safety-sensitive position pursuant to the award. We conclude, therefore, that this hypothetical outcome—which would nevertheless not mandate the employee be returned to performing safety-sensitive work without going through DOT's rehabilitative measures—proves insufficient to sustain a finding that the arbitration award was violative of public policy.

determining whether those procedures are necessary—not for making personnel decisions. Indeed, DOT's authoritative guidance interpreting § 40.149(c) says as much:

> There may be instances in which an arbitrator makes a decision that purports to cancel a DOT test for reasons that the DOT regulation does not recognize as valid. . . *[In such instances the] employer may still be bound to implement the personnel policy outcome of the arbitrator's decision . . . .*

To that end, in this case, a meaningful distinction lies in whether the drug test is valid for purposes of "personnel policy" or a "federal safety regulation." Under the RLA, the arbitrator has the authority to decide the drug test's validity for the former purpose, while under § 40.149(c), the MRO has the authority to decide the drug test's validity for the latter purpose.

And although 49 C.F.R. § 40.149(c) falls in the category of DOT safety regulations, these do not purport to regulate labor–management relations. *Cf. E. Associated Coal*, 531 U.S. at 65 ("[W]hen promulgating these regulations, DOT decided not to require employers either to provide rehabilitation or to 'hold a job open for a driver' who has tested positive, on the basis that such decisions 'should be left to management/driver negotiation.'" (quoting Controlled Substances & Alcohol Use and Testing, 59 Fed. Reg. 7484, 7502 (Feb. 15, 1994))).

At bottom, transportation-safety policy and labor policy are driven by different concerns, and "basic background labor law principles, [] caution against interference with labor-management agreements about appropriate employee discipline." *E. Associated Coal*, 531 U.S. at 65. Because § 40.149(c) did not preclude the PLB from disagreeing with the MRO, there is no direct conflict between the established regulation and the arbitration award. The

award was, therefore, not in violation of public policy, and the district court should not have set it aside.

We now tun to the parties' dispute over the scope of the PLB's jurisdiction and conclude Union Pacific waived the jurisdictional argument by failing to raise it below.

## B. Jurisdictional Argument

Absent a finding that the arbitration award violated public policy, Union Pacific argues that the award should nevertheless be vacated because the PLB exceeded its jurisdiction by ignoring the express language of the contract.

Unlike an objection to a federal court's lack of subject-matter jurisdiction, which can never be waived, an argument that an arbitrator lacked subject-matter jurisdiction is waivable. *See Lodge No. 725, Int'l Ass'n of Machinists v. Mooney Aircraft, Inc.,* 410 F.2d 681, 683 (5th Cir. 1969).

It is well established that a party may not sit idle through an arbitration procedure and then collaterally attack the procedure on grounds not raised before the arbitrators. *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 674 (5th Cir. 2002). If the issue was arbitrable and was not presented to the arbitrator, it is waived. *See Lodge No. 725*, 410 F.2d at 683; *see also Int'l Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d 491, 498-99 (5th Cir. 2003) (refusing to consider whether an arbitration award for backpay was ambiguous because the company did not argue for reduction before arbitrator); *Brook,* 294 F.3d at 673 (refusing to vacate award granted by improperly selected arbitrator because worker did not object to the defect during arbitration).

As Union Pacific failed to point out the regulation during arbitration, it waived its argument that the PLB exceeded its jurisdiction by not following 49 C.F.R. § 40.149(c). Union Pacific was aware, certainly, that the validity of

the drug test was before the PLB. And, although Union Pacific now claims the regulation is binding, it instead argued throughout arbitration that there was sufficient evidence for the PLB to find that the drug test was, in fact, positive. We therefore decline to consider whether the PLB acted outside its jurisdiction by overturning the MRO's false-positive determination, and we find that the PLB acted well within its jurisdiction by conditionally reinstating Beltran to his position with Union Pacific.

## IV.

For the reasons stated above, we conclude that the PLB's arbitration award did not violate public policy, and Union Pacific's arguments on jurisdictional grounds fail. The district court's judgment vacating the PLB's award is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

No. 18-50110

PRISCILLA R. OWEN, *Chief Judge*, dissenting:

With respect, I dissent. If Beltran can be reinstated without being placed in a safety-sensitive position, then the award does not violate public policy and the arbitrator had jurisdiction to disagree with the MRO for "personnel policy" matters—namely, the arbitrator can say the drug test was a false positive for purposes of the last-chance agreement.

However, the record does not reflect whether Beltran can be reinstated to a position that is not safety sensitive. If Beltran can only be placed in a safety-sensitive position, then the award violates public policy to the extent that it declares the test a false positive. Under that circumstance, the arbitrator exceeded its jurisdiction by reinstating Beltran in direct violation of the last-chance agreement.

Though I believe the majority opinion's overall framing of the case is correct, the underlying fact issue remains, and I would remand to the district court for its resolution.